Lena **WILLIAMS** et al., Plaintiffs,

v.

**AMF INCORPORATED** et al., Defendants.

No. C–3–79–227.

United States District Court, S. D. Ohio, W. D.

April 23, 1981.

**1050**

Paul H. Tobias, Cincinnati, Ohio, James L. Jacobson, Dayton, Ohio, for plaintiffs.

David L. Hall, Dayton, Ohio, for defendants.

## DECISION AND ENTRY ON OUTSTANDING MOTIONS; CONFERENCE CALL SET

RICE, District Judge.

The captioned cause came to be heard upon several pending motions, including the motion of the Defendant Leland Electrosystems, Inc. (Leland) seeking an Order of the Court dismissing the Complaint for reason that the Court lacks subject matter jurisdiction, and because no claim is stated for which relief can be granted.

### I.

Plaintiffs' cause arises from circumstances surrounding the June, 1978, sale of a manufacturing facility owned by AMF Incorporated, Electrosystems Division (AMF) to Leland, a newly formed and independent corporation. It appears undisputed that, at the time of the sale, Plaintiffs were all members of Local Union # 804 of the International Union of Electrical, Radio and Machine Workers (collectively IUE), and were employed at the subject facility until AMF ceased its operation at that plant. Plaintiffs were represented by the IUE in labor negotiations with AMF, pursuant to a collective bargaining agreement with AMF, until said operations ceased.

Shortly before consummation of the sale of the facility, Leland entered into negotiations with the IUE for the purpose of developing a collective bargaining agreement governing labor relations at the facility when the "changeover" was complete. The agreement that was finally adopted by Leland and the IUE included the following provision:

Article IV. Seniority

. . . . .

Section 2. Employees who were employed by AMF Electrosystems Division, AMF Incorporated, on its last day of operation, will be given preference in hiring by Leland Electrosystems, Inc. If hired, such former AMF employees will hold seniority sequentially in the order shown on the AMF [seniority list] . . .

None of the Plaintiffs have been hired by Leland although, as previously indicated, each was employed by AMF as of AMF's last day of operations. Plaintiffs have solicited the IUE's aid in processing grievances with respect to this situation, but

such efforts on Plaintiffs' part have been unsuccessful.

In the Complaint, as initially filed herein, Plaintiffs set forth three claims, denominated as Counts I, II and III. Count I alleged a breach of the AMF–IUE collective bargaining agreement by AMF through, *inter alia*, failure to bargain in good faith with the IUE concerning the effect of the "changeover" on Plaintiffs' employment and seniority rights. Count II alleged a breach of the Leland-IUE collective bargaining agreement by Leland through failure to give "hiring preference," or any consideration in hiring, to Plaintiffs pursuant to Art. IV § 2 of said agreement (quoted above). Jurisdiction for Counts I and II was predicated solely on section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Count III alleged that AMF and Leland "conspired" to deprive Plaintiffs of rights under the AMF–IUE agreement, to terminate Plaintiffs' employment with AMF, and to preclude Plaintiffs' employment with Leland. Plaintiffs claimed that Count III was pendent to the federal cause in Counts I and II for jurisdictional purposes. Compensatory and punitive damages totalling four million dollars were demanded.

Certain amendments have previously been allowed with respect to Plaintiffs' cause as initially pleaded. First, two additional *former* AMF employees (not hired by Leland after the "changeover") have been joined upon motion of the original Plaintiffs, pursuant to F.R.C.P. 20(a) and 21, thereby raising the total number of parties-Plaintiff to twenty. Second, also upon Plaintiffs' motion, AMF has been dismissed with prejudice as a party-Defendant herein, leaving Leland as the sole remaining Defendant.

The Court considers that the dismissal of AMF moots the following motions and, therefore, no decision need be entered thereon:

(1) AMF's motion seeking an Order of the Court dismissing the Complaint as to AMF, or, in the alternative, entering summary judgment in AMF's favor;

(2) Plaintiffs' motion, pursuant to F.R. C.P. 56(f), seeking an Order of the Court ordering a continuance on AMF's summary judgment motion, above, pending further discovery; and

(3) AMF's motion seeking an Order of the Court striking the Tobias affidavit which had been filed by Plaintiffs in opposition to AMF's summary judgment motion.

Further, the Court considers that the dismissal of AMF moots Plaintiffs' first motion seeking leave to amend the Complaint, in that part which would propose to amend jurisdictional allegations with respect to AMF (i. e., adding diversity jurisdiction) and to assert additional matter with respect to the claim against AMF in Count III (conspiracy). Finally, the Court considers that the dismissal of AMF effectively abrogates the entirety of the claim set forth in Count I (breach of the AMF–IUE agreement) and that part of the claim originally set forth in Count III, to the extent directed against AMF, although the factual allegations in Counts I and III that are necessary for support or explanation of the claims against Leland in Counts II and III remain unaffected by the dismissal of AMF.

Based on the preceding discussion, the Court concludes that five motions presently remain for consideration, to wit:

(1) Leland's motion seeking an Order of the Court dismissing the Complaint for reason that the Court lacks subject matter jurisdiction, and because no claim is stated upon which relief can be granted [1];

(2) Leland's motion seeking an order of the Court striking the Tobias affidavit, which Plaintiffs had filed in opposition to Leland's motion to dismiss, above;

(3) Plaintiffs' first motion seeking leave to amend the Complaint, in that part which would assert additional matter

---

1. Said motion also entails the conversion of the F.R.C.P. 12(b)(6) motion into one seeking summary judgment on Count II of the complaint due to the Defendant's submission of the affidavit of one Csaszar.

with respect to the claims against Leland in Count II and Count III;

(4) Plaintiffs' motion seeking an Order of the Court compelling Leland to respond, or to further respond to certain discovery requests; and

(5) Plaintiffs' motion seeking leave "to permit third amendment of the complaint" in order to add two individual party-Defendants.

## II.

Before turning to Leland's motion seeking an Order of the Court dismissing the Complaint, the Court deems it advisable to consider the subsequent motion by Leland to strike the Tobias affidavit and the first motion by Plaintiff for leave to amend the Complaint, because the disposition of each such subsequent motion would appear to have a potential effect upon the disposition of Leland's motion to dismiss.

■ *A. Leland's Motion to Strike.* The Tobias affidavit summarizes the recollections of Plaintiffs' counsel regarding the deposition testimony of Jo Lynne Csaszar. In turn, it appears that Csaszar's testimony related to her participation in, and understanding of, Leland's employee selection process at a time when Csaszar was an AMF employee (i. e., around the time of the 1978 "changeover").

Leland says that the affidavit should be stricken because Tobias does not have personal knowledge of Leland's employee selection process, because the affidavit constitutes inadmissible hearsay, because there is no affirmative showing that Tobias is competent to testify about the matters set forth, therein, and because the transcript of the Csaszar deposition is not attached. In short, Leland contends that the Tobias affidavit violates each express requirement for affidavits opposing summary judgment set forth in F.R.C.P. 56(e).

In part, the Court disagrees. First, it is clear that the Tobias affidavit refers only to the deposition *proceeding*, not the deposition *transcript*, and, therefore, the tran-

script does not need to be attached thereto. On the other hand, the affidavit does suggest that, to some undetermined extent, Tobias relied upon his own "notes concerning [Csaszar's] testimony" in making the affidavit. It would appear, therefore, under a strict construction of F.R.C.P. 56(e), that Tobias' "notes" should have been attached to the affidavit. However, the affidavit also suggests that Tobias used such "notes" only to refresh his recollection about the deposition. As such, the documents containing the notes would not be admissible, unless offered *by Leland*, F.R. Evid. 803(5)[2], and it would appear, therefore, that it would have been improper for Tobias to attach same to the affidavit, by virtue of the admissibility requirement in F.R.C.P. 56(e).

Second, within the four corners of the affidavit, it is clear that Tobias does not have personal knowledge of *Leland's employee selection process*, and there is no showing within the affidavit that he is competent to testify about that matter. However, it is equally clear from the affidavit that Tobias does have personal knowledge of, and is competent to testify about *what Csaszar said on that matter* during the course of her disposition. Thus, the affidavit is not to be stricken because of Tobias' incompetency or lack of knowledge about matters contained therein; but the affidavit might be stricken if Tobias' retelling of Csaszar's statements at the deposition, *when offered for the truth of Csaszar's statements*, is inadmissible as hearsay. Such offering for the truth of the statements appears to be the only relevance Csaszar's deposition testimony might have to the issues joined on Leland's motion to dismiss.

The Court concludes that the retelling of Csaszar's deposition testimony, for its truth, through the Tobias affidavit is hearsay, which is inadmissible under F.R.Evid. 802, and which therefore requires that the affidavit be stricken under F.R.C.P. 56(e).

---

**2.** Recorded recollection exception to the hearsay rule.

■ The Court acknowledges Plaintiffs' contention that the affidavit does not constitute hearsay because of the express exceptions in F.R.Evid. 801(d)(2) (see, particularly, subparagraphs (A) and (D), concerning statements by a representative or employee of a party-opponent). However, the admissibility of an affidavit when proffered alone (as in the present case) can and must be determined solely from the content of the document, i. e., within its four corners. There is no indication in the Tobias affidavit that Csaszar did have or does now have any relationship with Leland sufficient to qualify her statements as anything other than hearsay under F.R.Evid. 801. Further, even if this Court were to notice as fact that Csaszar has undertaken employment with Leland, which appears from other parts of the record, herein (*see* Csaszar affidavit attached to Leland's motion to dismiss), the Tobias affidavit would nonetheless be deficient in that there is no indication, therein, that Csaszar's deposition constituted either *Leland's own statements* as made by its representative, F.R.Evid. 801(d)(2)(A), or a statement by Leland's employee *concerning a matter within the scope of employment with Leland*, F.R.Evid. 801(d)(2)(D), (i. e., the Tobias affidavit states nothing other than the fact that Csaszar testified as AMF's employee).

For the aforestated reasons, Leland's motion seeking an Order of the Court striking the Tobias affidavit is well taken and is sustained. The Court notes that this ruling will have only limited effect on Plaintiffs' position in opposing Leland's motion to dismiss, since a transcript of the Csaszar deposition was properly filed by Plaintiffs, in conformance with F.R.C.P. 56, after Leland challenged the Tobias affidavit.

■ *B. Plaintiffs' First Motion for Leave to Amend.* In the part not mooted by the dismissal of AMF, Plaintiffs' proposed amendments to the Complaint would: (1) add material to paragraph 15 in Count II (breach of the Leland-IUE agreement) affirmatively alleging that Leland has hired new employees, who are not former AMF employees, instead of Plaintiffs; and (2) add six new paragraphs in Count II (numbered 23 to 28), each of which Plaintiffs say serves "to add generally some more information gained during discovery concerning the conspiracy and claim for interference with contract, business, and advantageous relations as alleged in Count III of the Complaint."

Upon examination of the proposed amendments, the Court concludes that certain of them would not appear to serve the purpose set forth by Plaintiffs, and the Court cannot find any other particular benefit in their addition to the Complaint at this time. For example (as well as further explained, below), proposed paragraphs 27 and 28, in their entireties, do not in any sense relate to a conspiracy, or to an interference with contractual or other advantageous relations by Leland, but merely allege a breach of the Leland-IUE agreement by Leland. Similarly, parts of paragraphs 24 and 26 merely allege that AMF breached the AMF–IUE agreement. Further, to the extent that paragraph 25 is comprehensible, it appears to allege nothing more than the legal consequence of some unidentified conduct by either AMF or Leland. Finally, with the possible exception of scattered allegations of intent and causation, there appears to be no additional information presented in paragraphs 24, 25 and 26, which might have been "gained during discovery," but said paragraphs merely contain a pejorative discourse on the legal conclusions, both old and new, which might attach to the few facts that are otherwise pleaded.

On the other hand, the Court must note that, technically, Plaintiffs did not, and do not now require leave to amend the Complaint as to Leland. F.R.C.P. 15(a) provides:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . .

Leland has not yet filed an answer to the Complaint, and Leland's motion to dismiss, even if treated as a summary judgment motion, is not to be considered as a responsive pleading in lieu thereof. *McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir. 1978); *cf.*

*Rogers v. Girard Trust Co.,* 159 F.2d 239 (6th Cir. 1947). Where a party is permitted to amend his pleading as a matter of course under the Civil Rules, but that party nonetheless seeks leave to amend, it is error to deny such request. *See Rogers, supra,* at 241; *Peterson Steels, Inc. v. Seidmon,* 188 F.2d 193, 194 (7th Cir. 1951).

For this reason, Plaintiffs' first motion seeking leave to amend the Complaint is well taken and is sustained. Plaintiffs are ordered to file their amended complaint within seven days after the date of receipt of notice of this decision. The Court might gratuitously advise Plaintiffs that it would be in their best interests to ensure that said amended complaint is complete, composite, and comprehensible, i. e., integrating those parts of the original Complaint and proffered amendments which remain viable in view of the dismissal of AMF, and in view of the discussion, above and below, evidencing this Court's understanding of Plaintiffs' cause.

### III.

For the purpose of considering Leland's motion to dismiss, the Court will assume that Plaintiffs have filed the amended complaint, and that the amendments consist of: (1) the indicated enlargement of paragraph 15; (2) the addition of the six new proffered paragraphs; and (3) the deletion of all claims of liability against AMF except to the extent necessary for support or explanation of the claims against Leland, including the claim in Count III sounding in conspiracy between Leland and AMF.

Also, to the extent that Leland's opposition to Plaintiff's first motion for leave to amend questions the substantive propriety of the proposed amendments, rather than the procedural propriety of leave to amend, the Court will consider that such opposition has been submitted as a supplement to Leland's motion to dismiss.

*A. Jurisdiction Over Count II (Breach of the Leland-IUE Agreement).* Although Leland's challenge, by its motion, to this Court's subject matter jurisdiction over Plaintiffs' breach of contract claim is not

clearly articulated, it does appear that Leland would at least assert the following contentions as suggesting "jurisdictional obstacles" with respect to Count II:

(1) Plaintiffs have never been Leland employees. Therefore, Plaintiffs lack "standing" to enforce the Leland-IUE agreement. Without "standing," Plaintiffs cannot place a breach of that agreement in issue, and Plaintiffs cause thereby fails the first jurisdictional prerequisite under section 301 of the LMRA, 29 USC § 185(a), i. e., that the action constitute a suit "for a violation of [a labor] contract . . . "

(2) The provision of the Leland-IUE agreement allegedly breached, i. e., Art. IV § 2 (quoted above), is a "seniority classification" provision for Leland employees rather than a "hiring preference" provision for former AMF employees. Because union negotiation of seniority provisions does not present a "justiciable question" for suit thereon by individual employees, Plaintiffs herein have presented no "justiciable question" upon which the Court might predicate subject matter jurisdiction.

(3) Similarly, since Art. IV § 2 creates seniority rights rather than hiring rights, Plaintiffs' allegations fail, in any event, to suggest that said provision has been breached.

(4) Plaintiffs have failed to join the IUE as a party-Defendant, herein, or otherwise sufficiently allege a breach of the IUE's duty of fair representation with respect to Plaintiffs' rights under Art. IV § 2. Since Plaintiffs must prove liability on the part of the IUE before proving liability against Leland, Plaintiffs have, in effect, failed to establish a condition precedent to jurisdiction, herein.

Upon consideration of Leland's contentions, the Court concludes that there is no reason presented to cause it to doubt that it has subject matter jurisdiction over Plaintiffs' cause in Count II, pursuant to section 301 of the LMRA. In essence, the Court finds that Count II of the complaint does sufficiently suggest an action based upon

violation of the Leland-IUE labor agreement, and that no bar to this Court's section 301 jurisdiction over such action has otherwise been shown.

With respect to Leland's specific contentions, the Court first notes, concerning (1) above, that it is settled in this Circuit that a section 301 suit may be properly maintained by persons other than the parties to the labor agreement, including individuals who are not employees of the employer-party, provided that the individuals who sue have a personal and beneficial interest in the enforcement of such agreement, and said interest is injured by a breach thereof. *Hill v. Iron Workers Local Union 25,* 520 F.2d 40 (6th Cir. 1975); *Hazen v. Western Union Telegraph Company,* 518 F.2d 766 (6th Cir. 1975). Since Plaintiffs allege that Art. IV § 2 of the Leland-IUE agreement was intended to benefit former AMF employees, including Plaintiffs, with "hiring preference" by Leland, and since breach of Art. IV § 2 by its nature deprives Plaintiffs of that benefit, it is clear that Plaintiffs have pleaded all necessary predicates for "standing" to complain of such breach of the agreement.

Further, with respect to (2) and (3) above, whether Art. IV § 2 establishes a "seniority classification" rather than a "hiring preference" presents, in itself, a "justiciable question" within the confines of section 301 jurisdiction. Simply stated, the question suggests the first step in determining liability in a section 301 action, i. e., interpretation of the labor agreement that has allegedly been breached. Of course, that question might be resolved as a matter of law in Leland's favor (i. e., the Court might conclude that Art. IV § 2 does establish nothing more than a "seniority classification"), in which case Plaintiffs' cause would be subject to dismissal under F.R. C.P. 12(b)(6). However, unless the contrary construction of Art. IV § 2 upon which Plaintiffs' seek to state their claims for relief (i. e., that it establishes a "hiring preference") is wholly contrived or frivolously asserted solely for the purpose of invoking section 301 jurisdiction, *no jurisdictional bar* would be presented by the Court's adoption of the interpretation favoring Leland, and dismissal would not be pursuant to F.R.C.P. 12(b)(1). Rather, under such circumstances, Plaintiffs would have merely failed to state a claim for which relief might be granted, and dismissal would follow under the authority of F.R. C.P. 12(b)(6). Indeed, in construing the labor agreement and adopting an interpretation favoring Leland, the Court would be exercising section 301 jurisdiction. *Cf. Bell v. Hood,* 327 U.S. 678, 682–83, 685, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Carr v. Learner,* 547 F.2d 135, 137 (1st Cir. 1976); *Enders v. American Patent Search Co.,* 535 F.2d 1085, 1087 (9th Cir.), *cert. denied,* 429 U.S. 888, 97 S.Ct. 242, 50 L.Ed.2d 170 (1976). It suffices to say at this point that the construction of Art. IV § 2 urged by Plaintiffs does not appear to be contrived or asserted solely for the purpose of invoking section 301 jurisdiction.

Leland's reliance on *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), and allied cases, *see, e. g., Southerlan v. Office & Professional Employees Int'l Union,* 396 F.Supp. 1207 (N.D. Tex.1975), for the proposition that no "justiciable question" is presented, herein, is misplaced. Such cases merely state that a union cannot be held liable for discriminatory conduct, allegedly in breach of fair representation duties, for negotiating a seniority clause or like provision having disparate impact among the bargaining unit's membership. This is so because the union must be allowed flexibility when seeking to serve the common good of all employees, even if same results in a disservice to some employees. It also follows from those cases that the employer cannot be held liable for conduct conforming to the negotiated provision, once adopted. These cases do not hold, however, in any sense, that either the union or the employer may discriminately breach a labor contract provision with impunity, once the provision becomes binding, whether or not said provision relates to seniority (or hiring preference).

Leland's contention under (4), above, is based on a novel, indeed, quite imaginative reading of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *Vaca* does say that there are "some intensely practical considerations," *id.* at 183, 87 S.Ct. at 913, which usually limit an individual's ability to sue on breach of a labor agreement by an employer without proving that the union has failed to fairly represent him:

> For the fact is that the question of whether a union has breached its duty of fair representation will in many cases be a critical issue in a suit under L.M.R.A. § 301 charging an employer with a breach of contract.

*Id.* This is because, in the ordinary situation, the employer's obligations to an employee are contingent upon the union's attempt at establishing the existence of the obligation, and enforcing same, through grievance procedures established in the employer-union labor agreement. If the grievance mechanism is also intended to be the exclusive remedy for employee claims against the employer, then the employee cannot sue the employer for breach of contractual obligations in court unless some reason exists for abrogating the exclusivity of the grievance remedy. The union's failure to fairly represent the employee in utilization of the grievance mechanism is the reason often presented. If presented, proof of same becomes a condition precedent to perfection of the employee's claim against the employer. Without such proof of failure of fair representation (or other reason justifying nonrecognition of the grievance procedure's exclusivity), the employee is bound by the labor agreement's provision for acceptance of the grievance procedure as the sole mechanism for determining the existence of the employer's obligation, and breach thereof, under any labor agreement provision. *Id.* at 184–85, 87 S.Ct. at 913–14.

■ However, what Leland ignores in *Vaca* is, first, its express acknowledgement that proof of failure of fair representation *is not always* a prerequisite to employee contract claims against the employer (e. g., where the employer repudiates the grievance mechanism, *id.* at 185, 87 S.Ct. at 914),

and, second, even when failure of fair representation does stand as a prerequisite to employee claims against the employer, neither the absence of the union as a party nor the requirement for proof of such union failure constitutes a jurisdictional bar in an action against the employer alone:

> The employee's suit against the employer, however, remains a § 301 suit, and the jurisdiction of the courts is no more destroyed by the fact that the employee, as part and parcel of his § 301 action, finds it necessary to prove an unfair labor practice by the union, than it is by the fact that the suit may involve an unfair labor practice by the employer himself . . . And, insofar as adjudication of the union's breach of duty is concerned, the result should be no different if the employee, as Owens did here, sues the employer and union in separate actions.

*Id.* at 186, 87 S.Ct. at 915.

For the aforestated reasons, the Court concludes that it has jurisdiction over Plaintiffs' cause, as set forth in Count II, pursuant to section 301 of LMRA, 29 U.S.C. § 185(a).

■ *B. Failure to State a Claim in Count II.* Leland's contention that Count II of the Complaint fails to state a claim for which relief can be granted is also without merit. Plaintiffs have alleged in sufficient detail the existence of the Leland-IUE labor agreement, the language at issue in Art. IV § 2 of said agreement, their status as beneficiaries of the agreement should the language at issue be construed as establishing a "hiring preference," and Leland's breach of Art. IV § 2 should the language therein be so construed. Although Plaintiffs have not explicitly alleged that they filed employment applications with Leland and that such applications, if any, were not accorded "preference" by Leland in violation of Art. IV § 2, it is not altogether clear, in the first instance, that the filing of formal employment applications is required by that provision. In any event, the Court finds that sufficient allegation of the fulfillment of all conditions precedent to Le-

land's "hiring preference" obligation (including, to the extent necessary, exhaustion of contractual remedies) is implicit in the express allegations regarding Plaintiffs' prior unsuccessful attempts to secure enforcement of Art. IV § 2. *Cf.* F.R.C.P. 9(c).

The Court notes that while some ambiguity might be postulated concerning the meaning and effect of Art. IV § 2, by virtue of the structure of the Leland-IUE agreement (i. e., insofar as the placement of Art. IV § 2 among the seniority terms of the agreement might indicate that it was intended solely as a "seniority classification," which would apply only to Leland employees, rather than, as it appears, a "hiring preference" for the benefit of persons in Plaintiffs' position), it cannot be presently concluded as a matter of law, from that structure alone, that Art. IV § 2 is nothing other than a "seniority classification" provision (as Leland contends). Indeed, because of the independent character of the first sentence in the subject section, and by virtue of its plain meaning, this Court might conclude to the contrary, as a matter of law, that the section is unambiguous and does establish a "hiring preference" for the benefit of former AMF employees (as Plaintiffs contend). However, the Court need not, *and should not* presently reach the latter conclusion in disposing of *Leland's* motion, because to do so would effectively grant an unsolicited partial summary judgment in Plaintiffs' favor on an issue that requires reference to additional matters for the most appropriate resolution (e. g., the content of *the entire* Leland-IUE agreement, or in the intent of the bargaining parties). Rather, the Court need only presently decide that Art. IV § 2 is not *necessarily* limited to the matter of seniority, and is capable of construction as a hiring preference provision. The Court so decides, and *merely assumes, for the benefit of the nonmovant Plaintiffs in addressing Leland's motion*, that Art. IV § 2 does establish a "hiring preference."

 *C. Summary Judgment on Count II.* For the aforestated reasons, the Court concludes that Plaintiffs have sufficiently stated a claim upon which relief can be granted in Count II. However, a more difficult question is presented by Leland's submission of the Csaszar affidavit, and the consequent conversion of Leland's F.R.C.P. 12(b) motion into one for summary judgment under F.R.C.P. 56.

The Csaszar affidavit indicates that Leland did employ a specific process in determining whether to hire former AMF employees. Csaszar explains that process as follows:

> There were group meetings of the Supervisors to decide how many jobs in each department there would be. At the last meeting, in June of 1978, the individual Supervisors were told approximately how many jobs each would have, and were asked to select an employee for each job. An employee was assigned to the more skilled job for which the employee was qualified. No former AMF employee would be excluded from consideration for employment unless three Supervisors ruled out that employee.

Leland says that the existence and utilization of this procedure satisfied whatever obligation Leland had to give "hiring preference" to former AMF employees.

Plaintiffs say that the term "preference," as used in the Csaszar affidavit, merely evidences that one "sort of" preference was given to certain former AMF employees *over other former AMF employees*, but it does not evidence the kind of "hiring preference" for former AMF employees *over "off the street" applicants* that is intended by Art. IV § 2. If limited to Csaszar's use of the term "preference," the Court must agree with Plaintiffs' understanding of the affidavit.

However, Plaintiffs also say that the Csaszar affidavit not only fails to show a "hiring preference" for the class of former AMF employees in that limited manner, but, in fact, the affidavit shows that Leland gave "wrongful treatment" to the preferred class by utilizing a "black ball" system (i. e., the "three supervisor" rule) in excluding certain members of the class from employment on grounds not necessarily related to

"employment qualifications." In this regard, the Court must disagree.

As previously indicated, the Court assumes that Art. IV § 2 establishes a "hiring preference" for former AMF employees, meaning that such persons would be given some measure of special consideration or advantage over "off the street" applicants in Leland's hiring decisions. However, the *exact kind or extent* of such advantage is not established by Art. IV § 2. Nowhere is it indicated that Leland would be limited to an assessment of "employment qualifications" (apparently meaning years of experience, demonstrable skills, and the like) in considering whether to hire members of the preferred class. Indeed, as long as Leland "preferred" former AMF employees over other applicants *in some manner* when considering each for hire, there would appear to be no prohibition against Leland's reference to factors other than "employment qualifications" (e. g., as Plaintiffs say, whether or not the candidate was a union "troublemaker") in selecting employees from either group.

Contrary to Plaintiffs' contention that the Csaszar affidavit shows "wrongful treatment" of former AMF employees, the affidavit suggests that such persons may, in fact, have been "preferred" over other applicants in at least one way. The attachment of the "black ball" epithet to the "three supervisor" rule, in selecting former AMF employees, does not alter the fact that such rule might constitute a "hiring preference." That is, such rule would give an advantage to former AMF employees if a "*one* supervisor" veto was used in considering other applicants for hire.

Of course, the Csaszar affidavit does not indicate what procedures were used in hiring "off the street." Without the presentation of such information in Rule 56 form, the Court cannot conclude that Leland gave *any* "hiring preference" to AMF employees vis-a-vis other applicants (i. e., a limited preference in *some manner*), much less a *substantial* preference (e. g., in respect of experience with AMF) which the evidence at trial might show was intended to be

given former AMF employees, through the adoption of Art. IV § 2 by the bargaining parties.

Further, while the Csaszar affidavit described a selection process generally applicable to former AMF employees (which might be considered to have accorded such persons a "preference" in hiring vis-a-vis other applicants), the Csaszar deposition indicates that said process may not have been followed in the case of each and every former AMF employee, including some of the Plaintiffs, herein. In particular, the deposition indicates that Leland's initial selection of employees, on June 26, 1978, was made from a group consisting solely of former AMF employees. However, after June 26, Leland no longer considered any former AMF employee for employment who was senior to the lowest person on the AMF seniority list that had been hired on June 26. In effect, this may have precluded many former AMF employees, *including some who had not been "permanently excluded" from employment on June 26 by the "three supervisor" rule*, from any consideration for hire when Leland did begin hiring "off the street." Thus, whatever preference might be said to inhere in the "three supervisor" rule, vis-a-vis other applicants, was not necessarily given to *each* former AMF employee.

For the aforestated reasons, the Court concludes that there remain genuine issues of fact concerning Leland's compliance with, or breach of Art. IV § 2, when said provision is construed as a "hiring preference" provision for the benefit of former AMF employees. Such issues are clearly material to a determination of whether Leland is liable under Count II of the amended Complaint. Therefore, Leland's motion to dismiss, when treated as a motion seeking an Order of the Court entering summary judgment in Leland's favor, and against Plaintiffs, on Count II, is also not well taken and is overruled.

■ *D. Count III (Conspiracy).* To the limited extent that Leland's motion to dismiss, and Leland's opposition to leave to amend, are directed to the substance of Count III, Leland would appear to say:

(1) the allegations of conspiracy, therein, are in general, not sufficiently specific or detailed;

(2) the lack of specificity in the allegations of conspiracy renders the count particularly insufficient in view of the fact that Leland is a corporation;

(3) the allegations of conspiracy are inappropriate in view of the fact that Plaintiffs are members of the IUE, which allegedly conspired with Leland; and

(4) the allegations of conspiracy are insufficient to support a claim for punitive damages.

The matters raised by this part of Leland's motion are directed only to the sufficiency of the Complaint; the truth of the allegations in Count III has not been placed in issue.

The Court concludes that the allegations in the initial Complaint, and as it will be amended, are sufficient to state a claim against Leland, under Ohio law, sounding in conspiracy to interfere with Plaintiffs' contractual rights and other interests. It is acknowledged that merely pleading the legal conclusion of conspiracy is not good in the face of a motion testing the sufficiency of such pleading. 2A *Moore's Federal Practice* ¶ 8.17[5] at 1759; *Schell v. Kaiser-Frazer Sales Corp.*, 28 Ohio App.2d 16, 274 N.E.2d 315, 318 (Montgomery Cty. 1971). However, where, as herein, the Complaint both expressly *and implicitly* describes the nature and purpose of the alleged conspiracy, its approximate timing, and the injury resulting therefrom, it is sufficient. The Plaintiff need not "plead his evidence" in stating a claim in conspiracy, or otherwise go into unnecessary detail. 2A *Moore's, supra*, ¶ 8.17[5] at 1758–61; 5 Wright & Miller, *Federal Practice & Procedure*, § 1233 at 181; *cf. Fuller v. Highway Truck Drivers & Helpers Local 107*, 233 F.Supp. 115 (E.D.Pa.1964); *Falsetti v. Local Union No. 2026, UMWA*, 34 F.R.D. 461 (W.D.Pa. 1964).

In support of the second challenge, above, concerning the specificity of allegations of *corporate* conspiracy, Leland relies upon *Solanics v. Republic Steel Corp.*, 142 Ohio St. 567, 53 N.E.2d 815 (1944). However, that case deals only with the propriety of a certain *jury charge* in a case of corporate conspiracy. Nothing in *Solanics* supports the proposition that a *pleading is insufficient*, in alleging conspiracy by a corporation, if it does not contain "allegations that the corporation acted through agents or employees and that the corporation consciously participated in such conspiracy."

With respect to the third challenge, above, the Court does not understand how Plaintiffs' membership in the IUE would deprive them of a right of action for individual injuries sustained by virtue of a conspiracy in which the union participated, *even if* the union's participation in such conspiracy had been pleaded.

Finally, with respect to the fourth challenge, above, the Court considers the allegation that Leland conspired "with malice" is a sufficient pleading upon which a proper demand for punitive damages, under Ohio law, may be predicated. F.R.C.P. 9(b); *cf. Saberton v. Greenwald*, 146 Ohio St. 414, 66 N.E.2d 224 (1946).

For the aforestated reasons, the Court concludes that Plaintiffs have sufficiently stated a claim upon which relief (including punitive damages) can be granted in Count III. Therefore, Leland's motion seeking an Order of the Court dismissing Count III is not well taken and is overruled.

### IV.

Also before the Court is Plaintiffs' motion seeking an Order of the Court compelling Leland to answer thirty-two interrogatories (some of which are in more than one part), eight document requests, and one request for admission (by which Plaintiffs seek to have Leland admit or deny the truth of each statement in the Tobias affidavit, *supra*).

Leland's response to the motion is of concern to this Court. Leland says that the motion is "fatally defective because it is too broad to be understood, too general to be responded to, too inaccurate to be sustained and is simply not supported by either logic

or authority." After pointing out that the motion is "technically defective," because it lacks the affidavit required by S.D. Ohio R. 3.7.3, Leland essentially says the motion is substantively insufficient because it does not demonstrate the "relevancy" of the discovery requests at issue, and because Plaintiffs have, otherwise, "done nothing to show that they are entitled to relief." Finally, Leland challenges the only case authority cited by Plaintiffs, which is *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), contending that "Plaintiffs either misread the case, or misleads [sic] the Court."

The Court agrees that Plaintiffs' motion is "technically defective" under S.D. Ohio R. 3.7.3. The "affidavit of impasse" required by that rule is not a mere formality. It is an intensely practical means of ensuring that the parties come into Court with discovery problems, *not* based upon one party's adamant requests to "discover the world" or upon the other party's captious refusal to disclose highly probative evidence, but *only* upon real points of difference in understanding of the applicable law or the character of the matters to be discovered, which points of difference have been defined with the utmost precision by virtue of zealous and good faith (albeit unsuccessful) extrajudicial negotiation. Also, in impressing upon each of the parties the desirability of going "the last mile" in informally attempting to resolve disputes before coming into Court, the local rule is clearly symbolic of the manner in which discovery is intended to be conducted under the federal discovery rules:

> Discovery in its most efficient utilization should be totally extra-judicial. The Court should rarely be required to intervene. Being an extra judicial process, informality in the discovery of information is desired. It is too often forgotten that a conference with or telephone call to opposing counsel may often achieve the results sought by formal discovery.

*Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir. 1977).

The salutary effects of the local rule should not be lightly foregone. The court does note that Plaintiffs indicated in memorandum that "several discussions" were had with Leland regarding discovery differences. However, the Court does not consider that this statement shows that "counsel have exhausted all extrajudicial means for the resolution of differences," S.D. Ohio R. 3.7.2, or is otherwise equivalent to an affirmative and specific affidavit "setting forth what extrajudicial means have been attempted to resolve differences." S.D. Ohio R. 3.7.3. *Cf.* N.D. Ohio L.Civ.R. 3.04 (requiring specific recitation of date, time, place and participants for each informal discussion).

On the record before it, the Court can only speculate as to the extent to which the parties have undertaken diligent, good faith efforts to resolve their differences and, consequently, as to whether or not the problems presented by Plaintiffs' motion represent real differences or simple contentiousness. Therefore, Plaintiffs' motion seeking an Order of the Court compelling Leland to answer certain discovery requests is, *at present,* deemed not well taken and is overruled. The parties are instructed to undertake efforts to resolve their differences in accordance with the letter and spirit of S.D. Ohio R. 3.7.3. If such efforts prove unavailing (or if they have already been undertaken without success), then Plaintiffs may present their motion, again, accompanied by the affidavit required under S.D. Ohio R. 3.7.3.

As guidance for the parties during extrajudicial discovery consultations, the Court deems it appropriate to explain why Leland's response to Plaintiffs' motion is of concern.

First, the Court is concerned that an accusation by counsel that an opposing party "misleads the Court" might, under some circumstances, be misconstrued as an attack on the opponent's integrity. Such statements should not be made unless the accusing counsel is certain of his grounds.

In the present case, the Court finds no "misreading" and nothing "misleading" in

Plaintiffs' reliance on *Oppenheimer Fund, supra.* Although the decision in that case did not turn on discussion of the federal discovery rules, the portions of the Court's opinion which Plaintiffs quote, *id.* at 351, 98 S.Ct. at 2389, do constitute a *correct and current statement of liberal discovery principles.* The decision is not misrepresented by omitting its reiteration of the limitations in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and, in fact, in contrasting discovery with class certification procedures, the decision suggests a reaffirmation of the *nonrestrictive elements* of *Hickman* (which are so often forgotten in the course of present day discovery disputes). Plaintiffs' reference to, and reliance on, *Oppenheimer Fund* is both proper and valuable.

Second, and more importantly, the Court is concerned when one counsel devotes a great deal of time challenging his opponent's authority on specious grounds, but fails to ensure that his own citations are in order. (People who live in glass houses should not throw stones.)

In the present case, Leland's memorandum in opposition to Plaintiffs' motion appears to quote from three decisions, in such parts as would loosely suggest that Plaintiffs are not entitled to any discovery which Leland opposes until Plaintiffs stand on their heads and beg for mercy. However, Leland's authorities are consistently misquoted, not simply in terms of capitalization or punctuation, but with respect to crucial, definitional language.

For example, according to Leland, the following statement can be found in *Fifth Avenue Peace Committee v. Gray,* 480 F.2d 326 (2d Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974):

> Plaintiffs are not entitled to use discovery to search for some possible claim.

Although unobjectionable in the abstract, this statement appears suspicious on its face because its indiscriminate application would run counter to the admonition, in *Hickman, supra,* that "the time-honored cry of 'fishing expedition'" is of little value in opposing discovery under the federal rules.

*Hickman* at 507, 67 S.Ct. at 392. But when the decision in *Gray* is examined, the closest approximation to Leland's quotation found, therein, is as follows:

> In a declaratory judgment action, "the complaint must stand or fall on its own merits and *cannot be used* as a vehicle for searching out and discovering a right of action."

*Gray* at 333 (emphasis added, citations omitted). The proposition from *Gray* is eminently correct because *declaratory judgment actions* do raise the peculiar problems regarding the "case or controversy" requirement under Article III, Section 2 of the Constitution. Otherwise, the *Gray* proposition and the *Gray* decision are not instructive on the scope of discovery, and neither lend support to, nor provide an explanation for the quotation Leland attributes to *Gray.*

Similarly, Leland attributes the following statement to *Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93 (N.D.Ga.1977):

> [G]eneral allegations of relevancy are not sufficient to overcome objections.

Correctly reproduced, the statement to which Leland apparently refers is:

> A general allegation of relevancy is not sufficient to overcome *specific* objections by an adverse party.

*Id.* at 101 (emphasis added). This Court emphasizes the term "specific," which was omitted from Leland's quotation, because in this case, as well as in *Ballenger Corp.,* that word is not unimportant.

In *Ballenger Corp.,* the party opposing discovery did not merely object "on grounds of relevancy," but articulated his objection and supported same with case law holding that certain information, very similar to the kind of correspondence which was requested, therein, was not discoverable. The party seeking discovery generally replied that the correspondence was relevant, even though the precise nature of the contents of the correspondence was not known, the manner in which it might relate to the action was not stated, and no specific need for disclosure was presented. The Court

upheld the opposing party's objection, but only to the extent that the correspondence contained matters deemed nondiscoverable by the cited case law—*i. e., only to the extent that the opposing party's objection was "specific." Id.* at 101–02.

It is, therefore, clear that Leland's reliance on *Ballenger Corp.*, herein, is particularly inappropriate. The Court has examined the discovery requests at issue in this case and finds, with few exceptions (such as Plaintiffs' Request for Admissions), that, on their face, the requests seek information which not only "appears reasonably calculated to lead to the discovery of admissible evidence," F.R.C.P. 26(b)(1), but, in fact, seek information which would probably constitute admissible and highly probative evidence in the first instance. In general, Leland's objections to such requests are quite "unspecific," and its responses to requests to which it does not object appear indefinite, incomplete and evasive.

Leland's objections to a number of apparently proper requests (e. g., interrogatory # 27 (second set), which seeks details of any discussions between Leland and the IUE concerning the interpretation of Art. IV § 2) consistently and uniformly provide no more basis for objection than a "lack of relevancy and materiality to the issues presented."

The responses to requests to which Leland does not expressly object provide more variety, but are no more enlightening. As examples:

___ Document request # 3 (first set) seeks production of writings "regarding the rehiring of former AMF employees by Leland or termination of Plaintiffs by AMF and regarding which employees Leland intended to hire after the purchase of AMF assets in June, 1978." Leland's response (or objection?) reads: "Because the concept of re-hiring is inapplicable to this situation, there is no appropriate response or documents."

___ Interrogatory # 18 (first set) requests that Leland "[s]tate what qualities and factors were missing from each of the former AMF employees who were not hired by Leland and not given a preference by Leland and who were not preferred by Leland." Leland's response reads: "All employees were considered."

___ Interrogatory # 55 (first set) requests that Leland "[s]tate whether any of the Plaintiffs are qualified to perform any of the work at Leland now performed by employees hired by Leland who did not previously work for AMF? If so, state which ones are qualified." Leland's response reads: "It is assumed that some of the Plaintiffs are qualified to perform some of the work."

___ Interrogatory # 23 (second set) seeks information regarding specific details of the final supervisors meeting for selection of former AMF employees (i. e., the "black ball" episode described in the Csaszar affidavit, above). Leland's response reads: "Not applicable."

Under *Ballenger Corp.*, and as a matter of common sense understanding of discovery principles, neither Plaintiffs nor this Court should be required to speculate as to the reasons underlying recalcitrance in directly answering requests, such as is reflected by Leland's answers, which plainly appear to seek discoverable information. In other words, the Court believes that a "general allegation of relevance" is not only sufficient, but is probably unnecessary, in order to overcome general objections of irrelevancy, and other failures to meaningfully respond by Leland.

The Court will not discuss Leland's third citation of authority, and will not examine the ramifications of a correct and complete reproduction of the misquoted language, therein, since, as Leland failed to note in its memorandum, that decision was vacated and remanded on appeal. *See Hawes v. C. E. Cook & Co.*, 64 F.R.D. 22, 26 (W.D.Mich. 1974), *vacated and remanded*, 538 F.2d 329 (6th Cir. 1976).

The Court has detailed its concern with Leland's response at some length, not because it attributes any bad faith to Leland or to its competent, highly honorable counsel, but because Leland's response uni-

formly reflects a fundamental misconception regarding the proper scope of discovery. *See Oppenheimer Fund, supra,* at 351, 98 S.Ct. at 2389. For purposes of discovery in this case, it is to be understood, henceforth, that those of Leland's defenses which are clearly at issue (upon which there are factual differences) are *not* accepted as true in order to circumscribe and restrict the issues in discovery. *See, e. g.,* Plaintiffs' Document Request # 3 (first set), *supra.* Specific requests are to be answered specifically. If Leland legitimately doubts the relevancy of a request, it shall state the basis for its doubt with particularity. If Leland believes that a request is unduly burdensome, or seeks confidential information, it may seek *appropriate* protection. Should any discovery impasse remain after the meeting(s) between counsel, the Plaintiffs may file a further motion to compel discovery based upon the *then* present impasse.

As indicated, this Court does not attribute bad faith to Leland. Indeed, no claim of bad faith is made by Plaintiffs and, except for the consistently "casual" character of Leland's responses (both to proper discovery requests and to Plaintiffs' motion), no pattern of captious conduct is found in the record to evidence ignoble aims. Nonetheless, in returning this matter to counsel for the performance of their duty under S.D. Ohio R. 3.7.3, the Court emphasizes that a greater degree of cooperation and a lesser degree of acrimony, than that which is currently reflected by the record, will be required. In this regard, the Court finds that the sense of the following excerpt from *Shapiro v. Freeman,* 38 F.R.D. 308, 312 (S.D.N.Y.1965), which is adopted wholeheartedly, may be instructive to these parties and others who appear before this Court:

The Federal Rules of Civil Procedure were designed as an affirmative aid to substantive justice, and those who choose to read them restrictively do so at their peril. It is time that depositions be conducted by members of the bar in a cooperative manner, in accordance with both the letter and spirit of the rules, without petty bickering and without intervention by busy courts with more important matters pressing for attention. It is clear to us that plaintiffs' attorney has no conception of his obligations to observe the rules "as an officer of the court" or otherwise. Rather, he appears to be bent on concealing vital facts or, at best, waging a war of delay, expense, harassment and frustration. There is no justification for his conduct, no basis at all for his instructing the deponents not to answer. As a result, the cooperative atmosphere envisaged by the federal rules has been poisoned by antagonism.

## V.

There being no objection or response by Leland, Plaintiffs' motion seeking leave "to permit third amendment of the Complaint" for the purpose of adding two individual party-Defendants (which, as the Court understands it, will constitute Plaintiffs' *second* amendment as well as Plaintiffs' *second* addition of new parties) is well taken and is sustained. F.R.C.P. 15(a), 20(a), 21.

## VI.

To summarize:

(1) Leland's motion seeking an Order of the Court dismissing the Complaint because the Court lacks jurisdiction over the subject matter, because no claim is stated in Count II, because Leland is entitled to summary judgment in its favor on Count II, or because no claim is stated in Count III, is overruled in its entirety.

(2) Leland's motion seeking an Order of the Court striking the Tobias affidavit filed by Plaintiffs is sustained.

(3) Plaintiffs' first motion seeking leave to amend the Complaint, in that part which would assert additional matter with respect to the claims against Leland in Count II and Count III, is sustained.

(4) Plaintiffs' motion seeking an Order of the Court compelling Leland to respond, or to further respond to certain discovery requests is overruled.

(5) Plaintiffs' motion seeking leave "to permit third amendment of the complaint," in order to add two individual party-Defendants, is sustained.

## VII.

*Addendum* : During the pendency of the preceding matters, Leland, after objecting to the Plaintiffs' third request for the production of documents, filed an additional motion, under Fed.R.Civ.P. 26(c), seeking an Order of the Court protecting certain of Leland's financial records from discovery. Leland says that the subject records, which show nothing more than Leland's financial condition and net worth, are not relevant to the issues in this case and are otherwise not discoverable because they constitute "trade secrets." Plaintiffs say that the requested records are relevant to Plaintiffs' claim for punitive damages, and that their designation as "trade secrets" is "totally spurious."

Leland's discovery motion is not accompanied by the affidavit of impasse required under S.D. Ohio R. 3.7.3. Since the Court is presently returning other discovery matters to counsel for failure to comply with the local rules, the matters raised by Leland's motion must be returned for the same reason and with the same instructions. *See* Part IV, *supra*. Therefore, Leland's motion under Fed.R.Civ.P. 26(c) is, at present, deemed not well taken and is overruled.