The only trouble with this argument as to suction was that there was not one iota of evidence in the record to support it.

In the case at bar, reasonable minds could reach but one conclusion, namely, no negligence of the railroad was a proximate cause of the death of decedent and that decedent was guilty of contributory negligence as a matter of law which proximately caused his death.

The plaintiff's motion to vacate the judgment and for a new trial is denied.

**SUETTA, Plaintiff-Appellant, v. CARNEGIE-ILLINOIS STEEL CORPORATION, Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3792. Decided October 6, 1955.

488

Thomas F. Joseph, Martins Ferry, James F. DeLeone, Columbus, for plaintiff-appellant.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellee.

## OPINION

By PHILLIPS, PJ.

Plaintiff appeals on questions of law from a judgment of the court of common pleas entered upon a jury verdict for defendant in plaintiff's appeal thereto from an order of the Industrial Commission of Ohio disallowing upon original and rehearing her claim of right to participate in the Workmen's Compensation Fund of Ohio by reason of the death of her husband, called decedent, upon whom she was wholly dependent for support at the time of his death on May 20, 1950, from "metastatic carcinoma of the lung."

On and for some time prior to January 12, 1949, decedent was employed by defendant corporation, a self-insurer under the Workmen's Compensation Act of Ohio, as a crane operator engaged in an operation known as "skull cracking," which was breaking scrap iron by means of a large ball swung from the crane he was operating, which travelled on a track about 100 feet above railroad tracks in the yards of defendant's plant in Youngstown, Ohio, in which steam and deisel locomotives were engaged in shifting cars under the cab of the crane he was operating.

On January 12, 1949, plaintiff was engaged in skull cracking at a time when several panes of glass were broken from the cab of the crane and steam locomotives as usual were shifting cars beneath him, which

broken panes it is claimed caused him to be more exposed to smoke which was emitted from two such locomotives and which he inhaled.

Decedent's testimony taken in perpetuam memoriam on an order of the court is that on January 12, 1949, and at such time he expectorated and coughed up "a whole mouth full of blood," from which time forward he suffered from chest ailments.

Plaintiff's medical witness testified that upon x-ray examination of decedent's lung he found three lesions in the right lung field which he believed was cancer.

Answering a hypothetical question that witness testified that in his opinion there was a direct causal relationship between the decedent's inhalation of smoke and his lung hemorrhage, which in turn aggravated an underlying and pre-existing cancer of his lung causing his death; and that in his opinion on and prior to January 12, 1949, decedent had such cancer, which was a slow growing type, which was accelerated by inhalation of smoke on the latter date.

The other of plaintiff's expert medical witnesses answering the same hypothetical question testified that in their opinions there was a direct causal relationship between decedent's death and such smoke inhalation.

Defendant's four medical witnesses, three of whom examined decedent during life, answering the same hypothetical question testified that in their opinion there was no direct causal relationship between decedent's death and inhalation of smoke on January 12, 1949.

Plaintiff contends that the trial judge erred to her prejudice in admitting testimony of the three defendant witnesses who had treated decedent during life because of the privileged relationship (which was not waived) of physician and patient granted by §2317.02. **Paragraph A, R. C.,** which as applicable provides:—

"The following persons shall not testify in certain respects:

"* * * a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient * * *."

Plaintiff further contends that the trial judge erred in admitting hospital records ordered by such doctors.

One of such three doctors testified:—

"Mr. Suetta, the understanding I had on going to Youngstown, was that Mr. Suetta and his family had agreed that he would submit himself to the company doctors for the purpose of making any examination we wished. On that basis, Dr. Mathay asked me to come to Youngstown and examine this man to ascertain insofar as possible whether or not his condition was of an occupation origin."

Counsel for defendant contend that such testimony was not privileged because the doctors in question were employed by defendant and accordingly no professional relationship existed between them and the decedent.

Plaintiff and decedent each voluntarily agreed to have decedent examined by defendant paid doctors for such examination as such doctors wished to make for defendant's benefit, which did not include treatment nor advice, neither of which were given to decedent nor plaintiff. The examination or consultation clearly was not for the purpose of alleviating decedent's pain nor curing his malady. The evi-

dence indicates no physician patient relationship between decedent and such physicians. Consequently no privilege existed as claimed by plaintiff. See Wigmore on Evidence (third edition), Volume 8, Section 2382B.

It is the treatment, not the examination made under the circumstances in this case, which creates a confidential physician patient relationship between doctor and patient, and hospital records made in connection with the various examinations made by defendant's doctors were not privileged for the same reason and accordingly were admissible for the purposes they were admitted.

The trial judge refused to submit in writing, in which refusal plaintiff contends he erred to her prejudice, the following requests to charge before argument numbered 4 and 5 respectively submitted on authority of **Industrial Commission v. Polcen, 121 Oh St 377:**—

"4. The presence of noxious fumes or smoke in unusual quantities at any given time may be proved by circumstantial evidence.

"If the presence of the fumes or smoke is shown, one circumstance of probative value to indicate their presence in unusual quantities is the effect upon the person subjected thereto."

"5. If you find that John Suetta, the decedent herein, while working as a crane operator for the Carnegie-Illinois Steel Corporation on January 12, 1949, was subjected to an emission of smoke created by his employment so as to cause him to suffer a coughing spell, resulting in a ruptured blood vessel in his lung as a direct and proximate result of the coughing, then I charge you, as a matter of law, that John Suetta sustained an accidental injury within the meaning of the Workmen's Compensation Laws of this State."

The case under consideration is distinguished clearly from the case of Industrial Commission v. Polcen, supra. In that case the syllabus must be read in the light of the evidence recited by Judge Allen in the opinion, which shows that the coughing on a particular day was extraordinary; that there was a specific coughing fit accompanied by a tearing of the abdominal tissues at about that specific time. In other words, there was an unusual and extraordinary happening at a particular time and place.

In this case there was no evidence of an **unusual** and **extraordinary happening** at a particular time and place, and the requested charge is not founded upon an unusual and extraordinary happening, and the giving of such instruction as submitted was not authorized under the definition of a compensable injury.

The trial judge did not err in refusing to charge the jury in writing before argument as requested by charge number 5.

In the case of **Industrial Commission v. Palmer, 126 Oh St 251**, a case of carbon monoxide poisoning, upon which request number 4 was based, the court said:—

"The record shows, and in fact the court will take judicial notice, that carbon monoxide gas is both colorless and ordorless. Therefore the presence of carbon monoxide gas in **unusual quantities** at any given time must necessarily be proved by circumstantial evidence."

The smoke and evidence of steam coming from locomotives, which decedent allegedly inhaled, were no greater than encountered by the

workman from day to day after several panes of glass were broken from the cab of the crane operated by him in the usual course of his employment.

The trial judge did not err in refusing to charge the jury in writing before argument as requested by charge number 4.

Plaintiff contends that the trial judge erred to her prejudice "in refusing to include in its general charge to the jury additional instructions as to the definition of accidental injury, requested by the plaintiff at the conclusion of the charge," namely "that if they found the decedent was exposed to unusual quantities of noxious fumes or smoke and suffered disability therefrom, then they would find that the decedent sustained an accidental injury."

There is no evidence indicating that on the day of inhalation decedent was exposed to fumes, smoke or steam to a greater degree nor in a larger quantity than he was exposed to normally for some time prior to such inhallation, as the evidence discloses that the panes of glass were broken from the cab of such crane for a long period of time prior thereto during all of which time he was exposed as he was on the day in question.

Viewing the charge in the light of the evidence we can not reach the conclusion at which plaintiff urges us to arrive that the trial judge erred to her prejudice in the respects under consideration, and this notwithstanding that during deliberation the jury made the following request of the trial judge:—

"We would like to (sic) a copy of the Ohio Law on what is an accident."

Plaintiff argues that this request indicated that the jury was concerned with the issue of what constitutes a compensable injury. Undoubtedly that is true but the requested charge was not authorized under the evidence.

Finally, plaintiff argues that the verdict of the jury and judgment of the trial court entered thereon are manifestly against the weight of the evidence, and that the trial judge erred to her prejudice in overruling her motion for a new trial, and in other respects "apparent upon the face of the record," upon which latter assigned ground of error we will not pass because appellant's counsel has failed to call our attention to "other errors apparent upon the face of the record," as alleged as a ground of error, or to comply in respect thereto with the provisions of Rule VII of this court that his briefs "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arose, together with a statement of the authorities relied upon." Under the evidence presented we can not hold the verdict to be against the manifest weight of the evidence.

We find no error prejudicial to plaintiff in any of the respects urged by plaintiff in her assigned grounds of error.

The judgment of the court of common pleas is affirmed.

NICHOLS and GRIFFITH, JJ, concur.