Juanita POLLITT, et al., Plaintiffs,

v.

MOBAY CHEMICAL CORPORATION, et al., Defendants.

Nos. C–3–80–555, C–3–81–027 and C–3–81–334.

United States District Court, S. D. Ohio, W. D.

July 26, 1982.

---

Thomas Mester, Daniel J. White, Cleveland, Ohio, Joseph P. Burke, Kettering, Ohio, for plaintiffs.

Edna Scheuer, Gary Auman, Smith & Schnacke, Dayton, Ohio, for General Motors, Inland Div.

Charles H. Horn, Dayton, Ohio, for Mobay Chemical Corp.

Neil F. Freund, Dayton, Ohio, for Mason and Dixon Tanks and Compo Industries, Inc.

Lyman Brownfield, Columbus, Ohio, for Matlack, Inc.

P. Eugene Smith, Dayton, Ohio, for Chesapeake & Ohio Railway Company, B & O Railroad Company and Chessie System, Inc.

James F. Barnhart, Dayton, Ohio, for Dow Chemical and AutoJectors, Inc.

Leo F. Krebs, Dayton, Ohio, for Allied Chemical Corp. and Chemical Leaman Tank Lines, Inc.

Roger J. Makley, Dayton, Ohio, Christopher Kirages, Indianapolis, Ind., for E. I. duPont deNemours & Co.

Gary Gottschlich, Dayton, Ohio, for BASF Wyandotte Corp.

Thomas E. Jenks, Gregory C. Gibson, Dayton, Ohio, for DSI Transport.

James W. Lyons, Cincinnati, Ohio, for Coastal Tank Lines, Inc.

James A. Readey, Columbus, Ohio, for Standard Tool & Manufacturing Co.

David P. Faulkner, Cincinnati, Ohio, for National Tool & Manufacturing Co.

DECISION AND ENTRY RELATING TO PENDING DISCOVERY MOTIONS; INLAND'S MOTION FOR A PROTECTIVE ORDER, CONSIDERED AS A MOTION TO QUASH OR MODIFY A SUBPOENA, SUSTAINED IN PART AND OVERRULED IN PART; PLAINTIFFS' MOTION FOR AN ORDER PERMITTING ENTRY UPON LAND OVERRULED; INLAND'S MOTION FOR A PROTECTIVE ORDER BARRING PLAINTIFFS' ENTRY UPON LAND CONSIDERED AS A MEMORANDUM CONTRA AND NOT RULED UPON

RICE, District Judge.

This case is a products liability action founded on this Court's diversity jurisdiction. Three discovery motions are currently pending, to wit:

1) motion by the Inland Division of General Motors Corporation (Inland), a non-party in this case, for a protective order concerning the production of documents requested in a subpoena duces tecum (doc. # 75, supplemented in doc. # 79);

2) Plaintiffs' motion for an order permitting entry upon the land of Inland (doc. # 158); and

3) Inland's motion for a protective order barring Plaintiffs' entry upon its land (doc. # 164).

## I. INLAND'S MOTION FOR A PROTECTIVE ORDER, CONSIDERED AS A MOTION TO QUASH OR TO MODIFY A SUBPOENA, IS SUSTAINED IN PART AND OVERRULED IN PART

In early July of 1981, Inland was served with two subpoenas by Plaintiffs, commanding the general managers of Inland's Dayton and Vandalia plants to appear for the taking of depositions at the Dayton Stouffer's Hotel on July 10, 1981 (doc. # 79, ex. A). Attached to the subpoenas were a listing of 34 separate requests for documents, to be produced at the deposition (doc. # 79, ex. B). The majority of the requests (id., nos. 1–22, 26–31) dealt with documents concerning two chemicals utilized in the manufacturing process at Inland: Toluene Di-Isocyanate (TDI) and Diphenyl Methane–4, 4'–Diisocyanate (MDI). Several of the requests concerned the employment of Plaintiff Juanita Pollitt (id., nos. 24–25, 32–34). Finally, one request, no. 23, covered the following:

> The records of any complaints received by Inland from its employees claiming any injury or discomfort from exposure to the chemicals TDI and MDI since January 1, 1974, including the name and address of the employees making such complaints.

Virtually all of the aforementioned requests asked for documents covering dates before, during, and after Plaintiff Juanita Pollitt's employment at Inland, which lasted from February of 1976 to June of 1979.[1]

Inland thereafter moved for a protective order, pursuant to Fed.R.Civ.P. 26(c) and 45(b), requesting that several limitations be placed on Plaintiffs' document request, to wit:

1) extending the time in which Inland must respond to the subpoena;

2) limiting discovery only to those documents which are relevant to Plaintiffs' cause of action;

3) strictly limiting dissemination of any trade secret or other confidential information, concerning the use of TDI and MDI, which is discovered from Inland;

---

1. Plaintiffs originally alleged that Ms. Pollitt's employment at Inland ended on February 6, 1979. In their amended complaint, Plaintiffs alleged that her employment ended on June 20, 1979. (Amended Complaint, doc. # 118, ¶¶ 7–8). The significance (or lack thereof) of this change in dates has been raised by the defendants in their pending motions to dismiss and/or for summary judgment, on statute of limitations grounds. See, e.g., Motion for Summary Judgment by Defendant National Tool and Manufacturing Company, doc. # 121, pp. 2–4. While the parties' memoranda on Inland's motion for a protective order refer to the February 6, 1979, date, said memoranda were filed prior to the filing of the amended complaint. Hence, for purpose of the instant motions, this Court will assume that Plaintiff's employment at Inland ran till June 20, 1979.

4) barring discovery of any documents prior to Plaintiff's employment with Inland on February 3, 1976;

5) ordering that the production of documents will occur at Inland's manufacturing facility in Vandalia, Ohio;

6) prohibiting the discovery of any documents which are subject to the physician-patient privilege; and

7) ordering that all costs associated with the production of documents requested by the subpoena will be borne by Plaintiffs.

Doc. # 79, pp. 1–2, 9–10.

In their reply memorandum (doc. # 88), Plaintiffs have basically agreed that limitations 1–3 and 5 are proper, and same need not be addressed by this Court. Plaintiffs did not address the fourth limitation, concerning the appropriateness of discovering information *before* the date of Plaintiff's employment at Inland. Absent *any* sort of argument by Plaintiffs that *pre*-employment documents are "relevant" or "reasonably calculated to lead to the discovery of admissible evidence," Fed.R.Civ.P. 26(b)(1), this Court, at least with the present state of the record, will also accept the fourth limitation as a proper one. Thus, the parties only expressly disagree on the sixth and seventh limitations.

 As a diversity action, any Ohio privilege rule will apply to this case, Fed.R. Evid. 501, and control during discovery as well. Fed.R.Civ.P. 26(b)(1). *Cf. State ex rel. Floyd v. Court of Common Pleas of Montgomery County*, 55 Ohio St.2d 27, 377 N.E.2d 794 (1978) (per curiam) (distinguishing between court-ordered disclosure of privileged information, not constituting a waiver of the privilege, and discovery of privileged information, not permitted under Ohio R.Civ.P. 26(B)(1)). Under Ohio statutes, a physician may not testify "concerning a communication made to him by his patient in that relation or his advice to his patient . . . ." Ohio Rev.Code § 2317.02(B). This provision has been construed as *not* extending to medical or hospital records, unless said records contain, in whole or in part, communications regarding diagnosis and treatment. *See, e.g., Suetta v. Carne-gie-Illinois Steel Corp.*, 75 Ohio L.Abs. 487, 144 N.E.2d 292 (Mahoning Cty.Ct.App. 1955); *Mariner v. Great Lakes Dredge & Dock Co.*, 202 F.Supp. 430, 433 (N.D. Ohio 1962).

Inland contends that Plaintiffs' document request no. 23, set forth above, falls under, in whole or in part, the Ohio hospital record privilege. This contention is premised on several affidavits sworn to by Inland employees, particularly that of Ruth A. Wimmel, the general supervisor of the medical department at Inland (doc. # 79, ex. E). Ms. Wimmel states, *inter alia*, that each employee's medical record file contains ten particular classifications of information, several of which might contain data or notes concerning diagnosis or treatment. *Id.*, ¶ 3. Without questioning the validity of Inland's factual assertions, Plaintiffs argue that *company* physicians (who, presumably, compiled much or all of the information in said records) are not protected by the privilege, *Dewert v. Cincinnati Milling Machine Co.*, 15 Ohio L.Abs. 268 (Hamilton Cty.Ct.App.1933), and that, in any event, Inland, as a third party to the physician-patient relationship, cannot raise the privilege.

 Plaintiffs' legal arguments are not entirely persuasive. First, even Plaintiffs acknowledge (doc. # 88, p. 4) that a *company* physician can be considered a *personal* physician, if he gives a diagnosis or treatment, and thus fall under the privilege. *See Malone v. Industrial Commission*, 140 Ohio St. 292, 43 N.E.2d 266 (1942). Second, while neither the Ohio statute nor Ohio case law appear to specifically address the point, *cf.* 56 O.Jur.2d *Witnesses* § 251 (1963), in some limited circumstances third parties to the relationship may raise the privilege. C. McCormick, *Evidence* 152 (E. Cleary ed. 1972); *General Motors Corp. v. Director of NIOSH*, 459 F.Supp. 235, 239 (S.D. Ohio 1978) (construing Ohio physician-patient privilege), *rev'd on other grounds*, 636 F.2d 163 (6th Cir. 1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). Such circumstances could arguably obtain herein, since Inland is the repository of the

records of many former "patients," who are, presumably, unaware of the instant litigation and would have no opportunity to assert or waive the privilege. Thus, Inland seems to be in a position to raise the privilege, at least with respect to those portions (if any) of the aforementioned medical records which contain information concerning treatment and diagnosis. *Cf. State ex rel. Floyd, supra* (court can order production of medical records even if privilege is not waived).

 More troubling than these evidentiary matters, however, is Inland's argument that production of the documents, requested by the subpoena, will impose an enormous cost, in both time and expense. Indeed, Inland contends that production of said documents will cost over 13,000 man-hours and some $331,000, the vast majority of which appears to stem from the anticipated search and retrieval of the medical records in request no. 23.[2] On the basis of these assertions, Inland requests a protective order, pursuant to Fed.R.Civ.P. 26(c), and/or an order quashing or modifying the subpoena, or conditioning compliance with same on Plaintiffs' advancement of expenses, pursuant to Fed.R.Civ.P. 45(b)(1)–(2).

It is true, as Plaintiffs point out, that the use of an unwieldy record-keeping system, which requires heavy expenditures in time and money to produce relevant records, is usually not an adequate excuse to frustrate discovery. *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 197–98 (S.D.Ohio 1980); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976); 4A Moore's *Federal*

*Practice*, ¶ 34.19[2] at 34–71 (2d ed. 1982). This rule carries much less force, however, when applied to extensive discovery sought from a *non*-party to litigation, as Inland herein. *Collins & Aikman Corp. v. J. P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.S.C. 1971); 5A Moore's, *supra*, ¶ 45.05[2] at 45–51 n.45. Pursuant to the discretion granted by Rule 45(b), this Court must be sensitive to the potential burden imposed on a nonparty during discovery, by balancing the need for the material against the burden (financial or otherwise) to be imposed, the possibility of lightening it through a protective order, the financial resources of the non-party, and the non-party's interest (if any) in the final outcome of the litigation. *United States v. IBM Corp.*, 62 F.R.D. 507, 510 (S.D.N.Y.1974); *Wilk v. American Medical Assoc.*, 28 F.R.Serv.2d 580, 581 (D.D.C.1979); 5A Moore's, *supra*, ¶ 45.05[2] at 45–47 n.44.

Balancing these factors, at least with respect to the request for medical records, leads to the conclusion that the subpoena (at least in its present state) should not be enforced for request no. 23. On the one hand, while the relevance of said records may seem obvious to all concerned, Plaintiffs have only asserted that they are "relevant" in a conclusory manner (doc. # 88, p. 5). On the other hand, Inland has demonstrated, through numerous affidavits, the extreme burden associated with producing said records. This burden, totalling over $300,000, is a significant one, even considering (through judicial notice, or otherwise) the vast financial resources available to Inland's parent corporation.[3] In contrast, all the other requests for documents appear

---

**2.** Inland reaches the dollar figure by multiplying the estimated number of man-hours required to conduct the search for all the documents requested (13,800, a number derived from the affidavits attached to doc. # 79), and the average cost to Inland of an hour of a salaried employee's time, calculated as $24. Doc. # 79, p. 1, n.1. Apparently, some 12,800 of the aforementioned man-hours would be concerned with the document search in medical reports. *Id.* at p. 2 n.2.

 Plaintiffs "seriously question the estimated man-hours and expense propounded" by Inland, doc. # 88, p. 6, but this Court, like Plain-

tiffs, has no independent basis to assess the accuracy of said estimates, and must rely on the good faith of Inland employees and Inland's counsel in formulating same.

**3.** Regarding the remaining factors to be balanced, the Court is unaware, from the record or otherwise, of any evidence that Inland has a direct or indirect interest in the outcome of this lawsuit. Furthermore, in view of the apparent complexity of Inland's medical record system, the Court would prefer to leave to counsel the task (if possible) of developing a narrower document request.

**106**

relevant, and appear to be much less burdensome, in terms of both time and money, than the medical record request.

 In resolving this dispute, the Court deems it appropriate to "quash or modify" the subpoena, Fed.R.Civ.P. 45(b)(1), in whole or in part, rather than following the alternative course of granting Inland a protective order. While Rule 45(d)(1) contemplates taking either avenue, the Court believes the former is more appropriate, since the parties have focused on the scope and alleged oppressiveness of the subpoena request, not strictly on the subject matter of the information sought to be discovered. The burden is on the movant opposing the subpoena to demonstrate that it is unreasonable or oppressive. *United States v. 691.81 Acres of Land, More or Less, Situate in Clark County, State of Ohio,* 443 F.2d 461, 462 (6th Cir. 1971) (per curiam); 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2457 at 435 (1971). For all of the foregoing reasons, the Court finds that Inland has met that burden for request no. 23, as same is presently framed. That burden has *not* been met with respect to the other document requests, and Inland must comply with same (excluding, as noted *supra,* any documents dated before Ms. Pollitt's term of employment began), within a reasonable time frame (i.e. 30 days from date of receipt of this entry), without expecting to be reimbursed. Inland's counsel are requested to submit an appropriate order regarding the dissemination of documents covering the chemicals TDI and MDI (The subject of Inland's third requested limitation to which Plaintiffs have voiced no disagreement). To obtain the documents requested in no. 23 (deleting any privileged information which might be found in same), Plaintiffs must first advance (at once or in stages) the "reasonable cost" of producing said documents. Rule 45(b)(2).

Plaintiffs' counsel are invited, in consultation and cooperation with Inland's counsel and, if necessary, this Court, to modify their request for medical records in order to make production of same less burdensome.

The Court expects discovery on this, and all other matters in this case, to proceed in an expeditious and cooperative manner.

## II. PLAINTIFFS' MOTION FOR AN ORDER PERMITTING ENTRY UPON LAND IS OVERRULED

Pursuant to Fed.R.Civ.P. 34, Plaintiffs have moved for an order allowing their attorneys and experts to enter upon the premises of Inland, at the Vandalia, Ohio plant. Plaintiffs make this request to enable them to inspect, measure, survey, photograph and/or test the machinery where Ms. Pollitt worked and where the chemicals TDI and MDI were utilized. Through an affidavit of Plaintiffs' counsel (doc. # 158, ex. A), they also assert that Inland's counsel invited all Defendants' counsel in this action to an inspection of the Vandalia plant, on March 30, 1982. Plaintiffs' counsel, it is further asserted, requested but were not permitted to join in this inspection.

 Unfortunately for Plaintiffs, it is well settled that Rule 34 provides this Court with no authority to order a *non*-party to permit entry on land. *Huynh v. Werke,* 90 F.R.D. 447, 450 (S.D. Ohio 1981); *Santa Fe International Corp. v. R. B. Potashnick,* 83 F.R.D. 299, 301 (E.D.La.1979); Note, *Rule 34(c) and Discovery of Non-Party Land,* 85 Yale L.J. 112 (1975). Accordingly, Plaintiffs' motion must be, and is, overruled.

Nevertheless, the Court feels compelled to briefly comment on this issue. In their response to Plaintiffs' motion (denominated as a motion for a protective order, but treated herein as a memorandum contra), Inland has neither denied nor explained its refusal to permit Plaintiff's counsel to join Defendants' counsel at the March 30, 1982 inspection. Had Inland, in the spirit of cooperation inherent in and necessary to the discovery process, *Williams v. AMF, Inc.,* 512 F.Supp. 1048, 1063 (S.D. Ohio 1981), permitted same, it would have been unnecessary for counsel to spend their valuable time in filing motions, or for this Court to rule upon the same.

There are a number of other motions pending in the captioned causes. These motions will be ruled upon, to the extent that same is possible, within a short period of time, following which this Court will convene a meeting with all counsel in order to explore the state of discovery, pretrial preparation, etc.