Pamela CANTALINE, et al., Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., et al., Defendants.

Leonard VIELE and Margorie Viele, Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., et al., Defendants.

John G. GRIFFITHS and Kathy P. Griffiths, Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., et al., Defendants.

Michael D. TSOLAS and Mary E. Tsolas, Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., et al., Defendants.

Stanley T. MOORE and Julia F. Moore, Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., et al., Defendants.

Nos. 82–8475–CIV, 82–8511–CIV, 83–8434–CIV, 84–8072–CIV and 83–8536–CIV.

United States District Court, S.D. Florida, N.D.

Nov. 15, 1984.

George Walker Wright, Jr., Wright & Caruana, Miami, Fla., for non-party Florida Power & Light.

Ian Comisky, Blank, Rome, Comisky & McCauley, West Palm Beach, Fla., for plaintiffs.

GONZALEZ, District Judge.

IN THIS ACTION Florida Power & Light ("FPL"), a non-party to these consolidated cases, moves to quash a subpoena duces tecum served on it by plaintiffs John and Kathy Griffiths.[1]

Plaintiffs' action seeks damages for injuries they sustained incident to John Griffiths exposure to defendants' asbestos products. Presumably, although not expressly stated in the complaint, John Griffiths worked at one or more of FPL's power plants, where one or more defendants supplied or installed the asbestos materials that allegedly caused plaintiffs' injuries.

As part of their discovery, plaintiffs served two subpoenas duces tecum on FPL. These requests sought

a) The blueprints and/or specifications for construction of the Florida Power and Light Power Plants located in St. Lucie (Hutchinson Island), Florida; Port Everglades, Florida; Dania, Florida; Riveria Beach, Florida; and the Turkey Point Power Plants, Florida City, Florida.

b) The blueprints and/or specifications and/or work orders or other documents for insulation products, including all asbestos insulation, fire retardent, waterproofing or sealant products specified for use and/or used during initial construction at the [power plants referenced in a) above].

c) The contracts entered into by Florida Power and Light with insulation contractors for the application of insulation materials, including all asbestos insulation, fire retardent, waterproofing or sealant products at the time of initial construction at the [power plants referenced in a) above].

---

1. On January 16 and March 28, 1984, the court consolidated the above-referenced cases for purposes of pretrial discovery and motions. The motion to quash reviewed herein was served by plaintiffs John and Kathy Griffiths on FPL as part of their suit against asbestos manufacturers. *John G. Griffiths and Kathy P. Griffiths v. Raymark Industries, Inc., et al.,* No. 83–8434–CIV–JAG, Motion to Quash Subpoena Duces Tecum (filed Apr. 4, 1984) (docket # 148).

d) Any subsequent blueprints, specifications, contracts or work orders entered into by Florida Power and Light Corporation for the removal of asbestos insulation and/or re-installation of insulating materials at the [power plants referenced in a) above].

To comply with plaintiffs' subpoenas, FPL was required to expend hundreds of man hours sorting through thousands of pages of documents [2] at a cost to the company of $7,121.15.[3] Having completed the arduous task of assembling the requested information, FPL seeks an advancement of costs from plaintiffs pursuant to Rule 45(b)(2), Fed.R.Civ.P., before it releases the documents.

The question presented, therefore, is under what circumstances should a non-party bear the cost of producing documents in accordance with a subpoena duces tecum?

The starting point for this analysis is Rule 45(b):

A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) *condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.*

Rule 45(b), Fed.R.Civ.P. (emphasis added).

"The advancement of costs as a condition for the denial of a motion to quash is committed to the sound discretion of the

---

**2.** The indexes of drawings and records storage microfilm and drawings on microfiche that were furnished to Plaintiffs' counsel itself comprised over 1,000 pages and the computer runs for Turkey Point and St. Lucie alone totalled 395 pages.

Insofar as the nuclear plants were concerned, the Nuclear Services Department was required to review a total of 12 file drawers of documents and 30 microfilm cartridges for documents responsive to the subpoenas. In all, a total of 183,000 pages had to be reviewed by the Nuclear Services Department. The Power Resources Department conducted the same task as the Nuclear Services Department for the fossil (non-nuclear) plants, necessitating a review of 10 file drawers at the Rivera Plant and 16 file drawers at the Port Everglades Plant, containing a total of some 246,000 pages.... In all, a total of approximately 470,000 pages of documents or drawings were required to be reviewed in order to attempt to fully respond to the subpoenas. Motion to Quash Subpoena Duces Tecum and Memorandum of Law in Support Thereof at 6–7.

**3.** FPL's cost break down as follows:

| | | |
|---|---|---|
| Power Plant Engineering Costs | Supervisory Personnel | $ 980.00 |
| | Clerks | 161.00 |
| | Computer Runs | 500.00 |
| | Xeroxing | 182.34 |
| | Lehy Storage Co. | 24.75 |
| | TOTAL | 1848.09 |
| Nuclear Services Costs | Clerks | 886.04 |
| | TOTAL | 886.04 |
| Power Resources (Port Everglades, Fort Lauderdale, and Rivera Beach Plants) | Supervisory Personnel | 793.12 |
| | Clerks | 332.57 |
| | TOTAL | 1125.69 |
| Law Department Costs | J.E. Leon (42.75 hr. at $65/hr) | 2278.75 |
| | Xeroxing (2486 pgs. at $.18/pg) | 442.08 |
| | | 3220.83 |
| Risk Management Costs | Supervisory Personnel | 56.00 |
| | Clerk | 98.00 |
| | TOTAL | 154.00 |
| TOTAL COSTS | | 7121.15 |

court." *United States v. International Business Machines,* 62 F.R.D. 507, 509 (S.D.N.Y.1974) (citing *Blank v. Talley Industries, Inc.,* 54 F.R.D. 627 (S.D.N.Y. 1972)).

> Pursuant to [this] discretion ..., [a] Court must be sensitive to the potential burden imposed on a non-party during discovery, by balancing the need for the material against the burden (financial or otherwise) to be imposed, the possibility of lightening it through a protective order, the financial resources of the non-party, and the non-party's interest (if any) in the final outcome of the litigation.

*Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101, 105 (S.D.Ohio 1982) (citations omitted).

■ By today's decision, the court seeks to define the way it resolves issues involving Rule 45(b)(2). A review of the Federal Rules of Civil Procedure and some of its philosophical underpinnings convinces the court that upon an appropriate motion by a non-party, the court should require the discovering party to advance costs to the non-party unless the discovering party can demonstrate that the sum sought by the non-party is unreasonable.[4]

Typically, a non-party is required to absorb the costs of complying with a subpoena duces tecum. Occasionally, a moving party will be ordered to advance costs to a non-party as a condition to denying a motion to quash if the non-party can demonstrate that compliance would require the expenditure of an excessive amount of time or money. On other occasions the advancement of costs has been denied regardless of expense in instances where the case was of significant public interest.

For example, in *Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101 (S.D.Ohio 1982), a non-party sought protection from a subpoena duces tecum listing thirty-four different requests for documents. In its motion for

protective order, the non-party contended that production of the documents would cost over 13,000 man hours and approximately $331,000. The court concluded that the non-party had met its burden of proving the party's request unreasonable and overly burdensome and required the inquiring party to advance to the non-party its costs of complying with the subpoena. *Id.* at 106.

Likewise, in *Celanese Corp. v. E.I. duPont de Nemours & Co.,* 58 F.R.D. 606, 612 (D.Del.1973), the district court required the discovering party to advance to the non-party the costs of producing requested documents once the non-party demonstrated that the party's request would involve two man-years of searching to fully comply. *See also Wright v. Jeep Corp.,* 547 F.Supp. 871, 876–77 (E.D.Mich.1982); *Collins and Aikman Corp. v. J.P. Stevens & Co.,* 51 F.R.D. 219 (D.S.C.1971).

In contrast to *Pollitt* and *Celanese,* neither time nor money was the central issue in *United States v. International Business Machine (IBM),* 71 F.R.D. 88 (S.D.N.Y.1976). As part of its defense against the government's antitrust action, IBM served a subpoena duces tecum on MRI Systems Corporation ("MRI"), a non-party to the suit. MRI moved to quash or modify the subpoena or alternatively to require IBM to advance costs to the non-party. MRI maintained that compliance with the subpoena duces tecum would require three to six months of search time and tens of thousands of dollars. *Id.* at 92. The district court denied MRI's motions, ruling that the non-party had a duty to absorb the costs of complying with the subpoena duces tecum because the case raised significant public issues and its outcome offered MRI certain competitive benefits. *Id.* The court's comments in the case are enlightening.

> Although the [non-party] asserts that it has no interest in this litigation, it seems clear to this court that all citizens have

---

**4.** The costs sought by the non-party may be unreasonable if they are disproportionate to the demands made; if other persons, similarly situated, would incur lesser costs to comply; or proof that a non-moving party and non-party

are in collusion to artificially inflate the costs of compliance so as to make the price of litigating the case prohibitive. These examples are illustrative and not intended to be all-inclusive.

an interest in the correct resolution of this action. This is not an action between private litigants seeking to resolve personal grievances. It is a major antitrust suit brought on behalf of all the people. Moreover, it cannot be overlooked that the movant and other members of the electronic data processing industry must necessarily be most affected by the final judgment in this case.

*United States v. International Business Machines,* 62 F.R.D. 526, 529 (S.D.N.Y. 1974) (cited at 71 F.R.D. at 92 n. 15).

What duty does a non-party have to absorb the costs of its compliance with a subpoena duces tecum? Under the rules of procedure, there are a number of discovery costs generated by non-parties but paid by the discovering party. For example, under Rule 45(c):

> Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person *and by tendering to him the fee's for one day's attendance and the mileage allowed by law.*

Fed.R.Civ.P. 45(c) (emphasis added). Consider also Rule 26(b)(4)(C)(i), which provides that "[u]nless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for the time spent in responding to discovery ...." Requiring the discovering party to pay a non-party's costs of compliance is consistent with Rules 26 and 45.

Analogizing the duty to produce discovery to the duty to testify, legal historians point out that "the public ... has a right to every man's evidence," 8 J. Wigmore, Wigmore on Evidence § 2192, at 70 (J. McNaughton rev. 1961), and thus every person who is properly summoned must give testimony unless it is privileged. An excerpt from Wigmore illustrates the point.

(1) From the point of view of the *duty* here predicated, it emphasizes the sacrifice which is due from every member of the community. That sacrifice may take two forms, either of them serious enough:

In the first place, it may be a sacrifice of time and labor, and thus of ease, of profits, of livelihood. This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-required favor. It is a duty not to be grudged or evaded. Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities, and become a hermit. He who will live by society must let society live by him, when it requires to.

Or the sacrifice may be of his privacy, of the knowledge which he would preferably keep to himself because of the disagreeable consequences of disclosure. This inconvenience which he may suffer, in consequence of his testimony, by way of enmity or disgrace or ridicule or other disfavoring action of fellow members of the community, is also a contribution which he makes in payment of his duties to society in its function of executing justice. If he cannot always obtain adequate solace from this reflection, he may at least recognize that it defines an unmistakable axiom. When the course of justice requires the investigation of the truth, no man has any knowledge that is rightly private ....

(2) From the point of view of society's *right* to our testimony, it is to be remembered that the demand comes, not from any one person or set of persons, but from the community as a whole—from justice as an institution and from law and order as indispensable elements of civilized life.... The business of the particular cause is petty and personal, but the results that hang upon it are universal. All society, potentially, is involved in each individual case.

Indeed, Rule 37, Fed.R.Civ.P., is consistent with this historical view, for it authorizes courts to impose sanctions on a non-party for its failure to comply with a discovery order.

But the duty owed to society and hence to the court *is* different from the duty owed to a particular party. Rule 45(b)(2) recognizes this difference, for it draws a distinction between a non-party's failure to

initiate the search for requested materials—a flagrant disregard of a court order; and that same party's refusal to turn over to the discovering party the documents collected pursuant to a court order unless the party first advances to the non-party the reasonable costs of compliance—a right accorded the non-party under the Rules.[5]

To the court, party and non-party alike owe a duty of obedience borne of respect for the judicial institution, and necessitated lest the order and predictability of the Rules of Civil Procedure be compromised. In a practical sense, however, the duty of obedience that a non-party owes a party differs from the duty the two owe the court. Most obviously, the non-party is not involved in any dispute with the discovering party. Indeed the non-party usually has little if any stake in the outcome of the case. Thus the rule as usually construed, generally compels a non-party to absorb costs even though it derives no benefit therefrom.

■ This court believes that the Federal Rules of Civil Procedure were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum. The inconvenience and burden to a non-party under the current construction of Rule 45(b)(2) violates the spirit of Rule 26(c). Several courts do recognize that "inconvenience to third parties may be outweighed by the public interest in seeking the truth in every litigated case." *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155, (1965); *see United States v. International Business Machines Corp.*, 66 F.R.D. 186, 187, 189 (S.D.N.Y.1974). But the non-party's duty to society, which includes the litigants, gives neither society nor the litigants the right to extract compliance without any reciprocal reward. For support, the court

again turns to Dean Wigmore's treatise on Evidence.

> [I]f this duty exists for the individual to society, so also he may fairly demand that society, so far as the exaction of it is concerned, *shall make the duty as little onerous as possible*. He may demand that the compulsion be relaxed so far as it is not indispensable for the ascertainment of truth. He may demand that the situation of a witness be made as free from annoyances as possible, that delay be diminished, that needless technicalities be ignored, that some sort of compensation for loss of time be provided, that the rules of evidence and the conduct of counsel be not such as to inflict unnecessary annoyance upon innocent persons; and that the law in general be so framed as to reduce to a minimum the necessary sacrifices made by the witness in the name of duty.

8 J. Wigmore, Wigmore on Evidence § 2192, at 73 (J. McNaughton rev. 1961) (emphasis added).

The rule that the court may order a discovering party to pay the reasonable costs of a non-party's compliance with a subpoena duces tecum finds support among the Federal Rules of Civil Procedure. Rule 37(a)(4), for example, permits a party to be reimbursed for its efforts to compel another party's compliance with a discovery order.

> If the motion [to compel] is granted, the court shall ... require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees ....

Rule 37(a)(4), Fed.R.Civ.P.

Likewise, Rule 26(b)(4)(C)(ii) provides that "the court may require ... the party seeking discovery to pay the other party a fair portion of the fees and expenses rea-

---

**5.** A non-party deponent who fails to follow a *court* order to compel may be ordered to pay the discovering party "the reasonable expenses incurred in obtaining the order, including attor-

ney's fees ...." Rule 37(a)(4), Fed.R.Civ.P. The costs and attorney's fees assessed against the non-party are a result of its disregard of its duty to the court.

sonably incurred by the latter party in obtaining facts and opinions from the expert."

Finally, Rule 30(g)(1) states

If the party giving notice of the taking of a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving the notice to pay to such other party the reasonable expenses incurred by him and his attorney in attending, including reasonable attorney's fees.

Rule 30(g)(1), Fed.R.Civ.P.

■ The Federal Rules of Civil Procedure generally do require a party to absorb initially the costs of complying with another party's request. The allocation of costs between the parties in this fashion is practical because expenses can be recouped upon a motion for costs and attorney's fees at the conclusion of the case. As to a non-party, such a remedy is unavailable.

The advance payment of costs to a non-party pursuant to Rule 45(b)(2) may prove less efficient, because so long as a non-party absorbs the costs of compliance there exists an incentive to be cost-effective. This internal check may be limited if the discovering party must pay the non-party's costs of production. But the internal pressure to limit costs is not altogether eliminated, because the discovering party may still petition the court to reduce the amount to be paid if the party can demonstrate that the costs sought are unreasonable. Also, if the discovering party is required to absorb the non-party's costs of complying with a subpoena duces tecum, it is less likely that the party's discovery request will be overly broad or frivolous.

■ In the instant case, plaintiffs have convinced the court that the amount sought by FPL to cover the costs of its producing the requested documents is unreasonable. Specifically, the court finds that the Griffiths should not be required to pay for

FPL's xeroxing costs, and that the sum sought to cover the work of attorney J.E. Leon should be reduced to $1,389.37. The photocopying was undertaken by FPL so as to retain a duplicate set of the materials turned over to plaintiffs;[6] it is not a cost of producing the discovery items. Attorney Leon's efforts were purely administrative and clerical; FPL did not demonstrate that Mr. Leon's time spent handling the discovery requests required any legal training.

Accordingly, plaintiffs are ordered to advance the sum of $4,289.69 to FPL, as constituting the reasonable cost of producing the requested information. Upon receipt of this sum, FPL is ordered to turn over to plaintiffs all of the requested materials.

---

**6.** The xeroxing performed under the heading "Power Plant Engineering Costs" apparently involved photocopying of indices and microfilm that, in its present form, was not easily used by

plaintiffs. Xeroxing of these resource materials is distinguishable from the photocopying of documents already produced.